# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

SANDRA R. HOHENSTEIN,         )
         )
         **Plaintiff,**         )
         )
v.         )         **Case No. 11-CV-0559-CVE-FHM**
         )
CITY OF GLENPOOL,         )
         )
         **Defendant.**         )

## OPINION AND ORDER

Now before the Court is Defendant City of Glenpool's Motion for Summary Judgment (Dkt. # 24). Defendant City of Glenpool (the City) argues that plaintiff was not disabled and it did not regard her as disabled, and that plaintiff cannot prevail on her disability discrimination claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and the Oklahoma Anti-Discrimination Act, OKLA. STAT. tit. 25, § 1101 et seq. (OADA). Plaintiff responds that her employment was terminated when the City refused to allow her to return to her job after she took leave under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. (FMLA), and that this shows that the City regarded her as disabled. She argues that defendant's legitimate, non-discriminatory reason for terminating her employment is pretextual, and she asks the Court to deny defendant's motion.

## I.

The City hired Sandra R. Hohenstein as a public safety dispatcher/jailer in 2001. The official job description for this position provides the following summary of Hohenstein's job:

> Under immediate supervision, provides direct citizen assistance and performs a variety of clerical duties including typing and filing, logs, tabulates, codes, enters into computer and files citations, accident reports, criminal arrests, reports to proper agencies, is also the direct link as needed between the general public, medical resources, fire personnel, police officers, department administration and other public

> service organizations. This employee also acts as the OLETS terminal operator and is responsible for the booking and well being of persons incarcerated in the City Jail. Employee is under the direct supervision of the Public Safety Support Specialist.

Dkt. # 25-2, at 2. Hohenstein regularly worked alone and she did have to deal with prisoners on a regular basis, but a police officer was always available to assist her if a prisoner became belligerent or acted out. Dkt. # 30-1, at 2-4. Hohenstein describes her work as clerical and states that she never handled a prisoner by herself. Dkt. # 30-1, at 3-4. In 2005, Hohenstein filed a workers' compensation claim after a chair slipped out from under her, and she was classified as temporary totally disabled from October 26, 2005 to an unspecified date. Dkt. # 30-21. Hohenstein states that she had a cervical fusion in 2006, and that she had permanent work restrictions following the surgery. Dkt. # 30-18. The workers' compensation court determined that Hohenstein had a permanent disability of 29.24 percent, but she was able to return to work in March 2007. Dkt. # 30-18; Dkt. # 32-1. She took FMLA leave in November 2007 and returned to work after submitting a release showing that she could work with limitations or restrictions. Dkt. # 25-1, at 7; Dkt. # 25-3. Hohenstein's physician, John S. Marouk, D.O., did suggest that the City provide Hohenstein a headset, and the City did offer Hohenstein a headset.[1]

Hohenstein applied for FMLA leave in November 2008 because she was scheduled for surgery on November 28, 2008. She requested FMLA leave from November 25, 2008 to February 9, 2009, and the City granted her request for the full amount of time. Dkt. # 27. The City's approval form advised Hohenstein that she would be required to "present a fitness-for-duty certificate prior to being restored to employment. If such certification is required but not received, [her] return to

---

[1]     Hohenstein chose not to use the headset because it "was too much of a hassle with the 911 system." Dkt. # 25-1, at 10.

work may be delayed until certification is provided." Id. at 3. On November 25, 2008, the City's Chief of Police, Dennis Waller, sent a letter to Hohenstein advising her that he would be recommending her termination. Dkt. # 25-14. Waller wrote that Hohenstein called another dispatcher, Ericka Messinger, and that she asked Messinger to call the Love family to inform them that an unidentified person trespassed on their property. Id. at 2. However, plaintiff had no evidence that the trespassing incident actually occurred. Waller was concerned that plaintiff's conduct would have exposed the City to liability for false arrest, and he also noted that Hohenstein had received a verbal and a written warning within the preceding six months. No action was taken due to Waller's letter and Hohenstein went on FMLA leave on November 25, 2008.

By February 9, 2009, the City had not received notice from Hohenstein as to when she planned to return to work, and the City Clerk, Susan White, requested permission to call Hohenstein to check on her status. Dkt. # 25-4. White was authorized to call Hohenstein, and White was also told to advise Hohenstein that she needed a release from her physician to return to work. White spoke to Hohenstein on February 9, 2009, and Hohenstein submitted a release from Dr. Marouk. The February 9, 2009 release stated that Hohenstein could return to work, but that she could not lift more than 10 pounds and she had to walk for five minutes every hour. Dkt. # 25-5. White contacted Waller, the Assistant City Manager, David Tillotson, and co-worker Dawna Christensen, and they were not comfortable having her return with restrictions. Dkt. # 25-6. Waller and Christensen were concerned that Hohenstein would be vulnerable to injury, and Tillotson stated that the City did not allow employees to return from FMLA leave with any restrictions. Id. Hohenstein describes this as a "100% healed policy." Dkt. # 30, at 13. White sent Hohenstein a letter advising her that she needed to submit a release with no restrictions before she could resume her employment. Dkt. # 25-

7. Hohenstein spoke to Christensen about her possible return to work, and Christensen told Hohenstein that she could not return to work with any restrictions imposed by her physician. Dkt. # 25-1, at 17.

Hohenstein attempted to report to work on February 17, 2009, and she states that she was turned away at the door by a police officer. Id. at 9-10. Hohenstein submitted a second release form to the City on February 17, 2009. The release was dated February 16, 2009, but she admits she did not visit Dr. Marouk between February 9 and 16, 2009. Dkt. # 30-1, at 9. The February 16, 2009 release simply states Hohenstein's name and the words "can" and "work" are circled. Dkt. # 25-8. The release does not state any restrictions, but Dr. Marouk did not check the line next to "FULL DUTY WITHOUT RESTRICTIONS." Id. Deborah Pengelly of the City's human resources department contacted Dr. Marouk's office to clarify if Hohenstein could return to work without restrictions, and Dr. Marouk's office sent a new release form. The new form did not state an effective date and Dr. Marouk had not checked the line next to "FULL DUTY WITHOUT RESTRICTIONS." Dkt. # 25-9.

On March 6, 2009, White sent a letter to Hohenstein notifying her that her FMLA leave would expire on March 8, 2009, and that she needed to contact White no later than March 11, 2009 to notify the City if she would return to work. Hohenstein called White and stated that her next doctor's appointment was in April 2009. Hohenstein also stated that her doctor was not comfortable releasing her to work and that the doctor "felt like she was pushing herself to return to work [without] restrictions." Dkt. # 25-11, at 2. However, Hohenstein did not claim that she suffered from a disability and she did not request an accommodation. Dkt. # 25-12, at 5-6. On March 13, 2009, the City Manager, Ed Tinker, sent Hohenstein a letter notifying her that she had exhausted her

FMLA leave and that her employment was being terminated due to her failure to return to work. Dkt. # 25-13, at 2. The letter stated that Hohenstein could re-apply for employment with the City if she "medically cleared to perform the duties of the position." Id. Dr. Marouk released Hohenstein from any further work restrictions in April 2009. Dkt. # 25-1, at 25-26. Hohenstein applied for other dispatching jobs, but she has not reapplied for a job with the City. Dkt. # 25-1, at 27, 28.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could

reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant argues that plaintiff did not comply with the City's FMLA leave policy and that she was not permitted to return to work based on the uniform application of a City policy. Dkt. # 25, at 18-20. Defendant also argues that, at most, it perceived plaintiff as having a transitory and minor health condition, and it did not perceive plaintiff as disabled as that term is defined in the ADA. <u>Id.</u> at 21-22. Plaintiff responds that she is not arguing that was actually disabled but, instead, that the City viewed her as unable to perform the major life activity of working and it regarded her as disabled. Dkt. # 30, at 16-21.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). ADA discrimination cases are governed by the burden-shifting framework

announced in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[2]  <u>Morgan v. Hilti, Inc.</u>, 108 F.3d 1319, 1323 (10th Cir. 1997).   Pursuant to this framework, the plaintiff bears the initial burden of establishing a <u>prima</u> <u>facie</u> case of discrimination.  If she does so, "then the defendant must offer a legitimate, non-[discriminatory] reason for the employment action.  The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual."  <u>Metzler v. Fed. Home Loan Bank of Topeka</u>, 464 F.3d 1164, 1170 (10th Cir. 2006) (citations omitted).   In order to defeat a motion for summary judgment, the plaintiff must show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual-i.e., unworthy of belief."  <u>Randle v. City of Aurora</u>, 69 F.3d 441, 451 (10th Cir. 1995).

In order to establish a <u>prima</u> <u>facie</u> case under the ADA, a plaintiff must demonstrate:

(1) that she is a disabled person within the meaning of the ADA; (2) that she is qualified, that is, she is able to perform the essential functions of the job, with or without reasonable accommodation; and (3) that the employer terminated her employment under circumstances which give rise to an inference that the termination was based on her disability.

<u>Morgan</u>, 108 F.3d at 1324 (internal citations omitted).  The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

---

[2]     Plaintiff suggests that the City's "100% healed policy" is direct evidence of discrimination, but this argument is raised in an attempt to show that defendant's stated reason for terminating her employment is pretextual.  Dkt. # 30, at 22.  If plaintiff were correct, this would remove the case from the burden-shifting analysis applicable to ADA claims based on circumstantial evidence of discrimination.  However, the cases cited by plaintiff establish that the existence of a "100% healed policy" is treated as circumstantial evidence of discrimination, and the <u>McDonnell Douglas</u> burden-shifting analysis applies to plaintiff's ADA claim.  <u>See</u> <u>Dillon v. Mountain Coal Co.</u>, LLC, 569 F.3d 1215, 1219 (10th Cir. 2009); <u>Jones v. United Parcel Service, Inc.</u>, 502 F.3d 1176, 1188 (10th Cir. 2007); <u>Henderson v. Ardco, Inc.</u>, 247 F.3d 645,  653 (6th Cir. 2001).

(B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1). Plaintiff does not claim that she suffers from a disability but, instead, that defendant perceived her as disabled. In the Tenth Circuit, a person is regarded as disabled when"(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Johnson v. Weld County, Colorado, 594 F.3d 1202, 1219 (10th Cir. 2010). Impairments that are "transitory and minor" may not be used to support a claim of perceived disability, and an impairment is transitory if it has an actual or expected duration of less than six months. 42 U.S.C. § 12103(3)(B). The determination of whether a condition is transitory and minor must be made using an objective standard. 29 C.F.R. § 1630.15(f). The mere fact that an employee applies for and receives FMLA leave does not show that the employer regarded an employee as disabled. Berry v. T-Mobile USA, Inc., 490 F.3d 1211, 1219 (10th Cir. 2007).

Defendant argues that, at most, it could have perceived plaintiff as having a short term impairment following her surgery, and that this is not sufficient to establish that it regarded her as disabled. Plaintiff had surgery in December 2008 and was cleared to work by Dr. Marouk in April 2009, and defendant asserts that any limitation plaintiff may have had after her surgery was "transitory" because the limitation lasted less than six months. Plaintiff responds that she had injuries prior to her December 2008 surgery, and that defendant was aware that the Oklahoma Workers' Compensation Court had found her to be partially permanently disabled. Dkt. # 30, at 18.

According to plaintiff, defendant may have perceived her to be disabled based on her prior injuries and, thus, her perceived limitations were not transitory.

Plaintiff has produced no evidence that the City relied on perceived limitations from her prior injuries and/or workers' compensation claims when it refused to allow her to return to work. However, there is evidence that the City viewed plaintiff's work restrictions as short-term and that it fully expected plaintiff to return to work before her FMLA leave expired. Dkt. # 25-12, at 6-7 (Tillotson anticipated that plaintiff was going to obtain a full release and return to work, and he did not perceive plaintiff as having a long-term condition); Dkt. # 25-19 (White assumed that plaintiff would make a full recovery from surgery and return to work). Plaintiff's argument also contradicts her plain statement that she is bringing a "regarded as" ADA claim, because the Court would essentially be considering whether her permanent injuries constituted an actual disability under the ADA. See Dkt. # 30, at 17 (plaintiff states that she "is not claiming that she has a disability that substantially limits one or more major life activities or even that she has a record of such an impairment"). Plaintiff was permitted to return to work after taking FMLA leave in 2007 and she does not claim that the City treated her differently after she resumed working, and the Court does not find plaintiff's 2007 FMLA leave or the workers' compensation court's finding of partial permanent disability relevant to her ADA claim. Viewing the evidence in a light most favorable to plaintiff, defendant's conduct shows that it did not perceive plaintiff as fully recovered from her surgery when it terminated her employment in March 2009. This does not mean that the City regarded plaintiff as disabled as that term is defined in the ADA. See White v. Interstate Distributor Co., 438 Fed. Appx. 415 (6th Cir. Aug. 23, 2011) (employee could not establish that his employer regarded him as disabled when he had temporary work restrictions imposed by a physician).

Instead, it shows that defendant regarded plaintiff as having some work restrictions while she recovered from surgery. Considering the deposition testimony of Tillotson and White, the evidence shows that the City still expected plaintiff to make a full recovery before her FMLA leave expired and there is no evidence that the City viewed plaintiff's restrictions as permanent or long-term. Under an objective standard, the City has also shown that plaintiff's work restrictions were in place for less than six months and there is no factual basis to find that plaintiff actually had a physical impairment that the City could have regarded as a disability under the ADA. See 29 C.F.R. § 1630.15(f). Defendant has shown that, at most, it perceived plaintiff as having a transitory and minor impairment, but this is not sufficient to meet plaintiff's burden to show that City regarded her as disabled.

Even if the Court were to assume that defendant regarded plaintiff as having a more permanent impairment, plaintiff must still show that defendant mistakenly perceived her as having a substantially limiting impairment that prevented her from performing a major life activity. Justice v. Crown Cork & Seal Co., Inc., 527 F.3d 1080, 1086-87 (10th Cir. 2008). Plaintiff argues that defendant perceived her as unable to work. Dkt. # 30, at 18-19. Working is a major life activity, but the Court should consider the "major life activity of 'working' . . . only as a last resort." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1146 (10th Cir. 2011). To determine whether defendant perceived plaintiff as unable to work, the Court must engage in a two-step inquiry. First, the Court must determine if the employer viewed the plaintiff as unable to perform her specific job because an impairment. Dillon v. Mountain Coal Co., LLC, 569 F.3d 1215, 1219 (10th Cir. 2009). Second, plaintiff must show that the employer subjectively believed that she was unable to perform either a class of jobs or a broad range of jobs in various classes. Id. The Tenth Circuit has described

the difficulty a plaintiff faces when attempting to prevail on a "regarded as" disabled claim relying on the major life activity of working:

> Proving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult. Not only must a plaintiff demonstrate that an employer thought he was disabled, he must also show that the employer thought that his disability would prevent him from performing a broad class of jobs. As it is safe to assume employers do not regularly consider the panoply of other jobs their employees could perform, and certainly do not often create direct evidence of such considerations, the plaintiff's task becomes even more difficult.

EEOC v. Heartway Corp., 466 F.3d 1156, 1162 (10th Cir. 2006) (quoting Ross v. Campbell Soup Co., 237 F.3d 701, 709 (6th Cir. 2001)).

Assuming that defendant viewed plaintiff as unable to work because of "impairment," plaintiff must also show that defendant subjectively viewed her as unable to work in a class of jobs or a broad range of jobs. Plaintiff argues that defendant subjectively perceived her as unable to perform any job within the dispatcher/jailer class of jobs. Dkt. # 30, at 19. She relies on the deposition of Tinker in an attempt to show that he believed that plaintiff could not have worked as a jailer/dispatcher in any jail with her work restrictions. Dkt. # 30-6, at 2. However, Tinker's testimony does not establish that he viewed plaintiff as unable to work in any capacity as a dispatcher but, instead, he was concerned that she could not safely perform the specific duties of her own job. Tinker testified that he believed that plaintiff could work as a dispatcher in a jail if she were not required to handle prisoners. Id. at 2, 12. Waller also expressed some concern that plaintiff could not perform a job that required her to work with prisoners, but he testified that it was not his decision whether plaintiff could return to work. Dkt. # 30-17, at 2. The evidence does not show that the City subjectively believed that plaintiff could not perform any job in a prison setting,

even if the City questioned whether plaintiff could return to her specific job. Plaintiff argues that this case is similar to Justice, in which the Tenth Circuit reversed the district court's decision to grant summary judgment to the employer. In Justice, the Tenth Circuit found that the plaintiff had presented sufficient evidence to raise a fact issue as to whether the employer subjectively believed that plaintiff was unfit to work as an electrician in any environment, and there was a genuine dispute of material fact concerning the employer's subjective view of the plaintiff's ability to work in the class of jobs available to electricians. Justice, 527 F.3d at 1087. Plaintiff has not shown that defendant perceived her as unable to work in the class of jobs performed in a prison, because Tinker's testimony does not establish that all prison jobs require a person to work with prisoner. Viewing the evidence in a light most favorable to plaintiff, she has shown only that Tinker viewed her as unable to return to her job as a jailer/dispatcher and any job with the same requirements, but this does not meet plaintiff's burden to show that the City subjectively regarded plaintiff as unable to work in a class of jobs or a broad range of jobs.

Plaintiff has not established that defendant perceived her as disabled for two reasons. First, plaintiff's perceived limitation was transitory and minor, and her claim is barred by § 12102(3)(B). Second, she has not produced sufficient evidence to show that defendant subjectively believed that she was unable to work in a class of jobs or a broad range of jobs, and she has not established that defendant regarded her as disabled. Thus, defendant is entitled to summary judgment on plaintiff's ADA claim.

Plaintiff has also alleged a state law claim for wrongful termination in violation of an Oklahoma public policy. Under the OADA and Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989), plaintiff must show that defendant's discriminatory motive was a significant factor behind her

termination, and this standard is "much more than some de minimums burden on the plaintiff." Medlock v. United Parcel Service, Inc., 608 F.3d 1185, 1197-98 (10th Cir. 2010). Plaintiff states that her OADA claim is based on the same facts and legal authority already considered by the Court. Dkt. # 30, at 25-26. Plaintiff has not established that she was disabled or that defendant regarded her as disabled and, for the same reasons stated above, the Court finds that defendant is also entitled to summary judgment on plaintiff's state law discrimination claim.

**IT IS THEREFORE ORDERED** that Defendant City of Glenpool's Motion for Summary Judgment (Dkt. # 24) is **granted**. A separate judgment is entered herewith.

**DATED** this 23rd day of May, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE